UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA        :

v.                              :       Docket No. 3:97CR48(EBB)

JOSE RAMOS                      :

<u>RULING AND ORDER RE: REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582</u>

On May 16, 2008, the court issued an order to show cause why the defendant, Jose Ramos ("Ramos"), was not entitled to a reduction in his sentence pursuant to the crack cocaine amendments to the Sentencing Guidelines. This court has now considered the papers filed in response to the order to show cause, the court file, including Ramos's original Presentence Report ("PSR") and the addendum, the court's (Nevas, J.) statement of reasons for imposing sentence, the transcript of the sentencing hearing, the Bureau of Prison's Progress Report, and the recommendation of the U.S. Probation Office.

Based on its review of the record and consideration of the factors set forth in § 3553(a), the court concludes that, although Ramos qualifies for a sentence reduction of five months, a sentence reduction is not appropriate.

**I.      Factual and Procedural Background**

On March 26, 1998 Ramos pleaded guilty to one count of racketeering, in violation of 18 U.S.C. § 1962(c). Thereafter, the USPO prepared Ramos's PSR. His offense level was calculated pursuant to U.S.S.G. § 2E1.1, which provides that the base offense level for racketeering offenses is the greater of level 19 or the offense level applicable to the underlying racketeering activity. If the underlying activity involved more than one offense, each offense is

treated as if it were contained in a separate count of conviction. U.S.S.G. § 2E1.1 app. n.1. In Ramos's case, there were three underlying offenses --conspiracy to commit murder and two closely related counts of distributing crack cocaine --and thus a multiple count guidelines computation[1] was required under U.S.S.G. § 3D1.4,[2] the guidelines' grouping rules. This computation resulted in two groups. Group one consisted of the conspiracy to commit murder, which had a base offense level of 28. No adjustments were made, and the resulting offense level for group one was 28. Group two combined the two drug counts. Because the quantity of crack cocaine attributed to Ramos was between 50 and 150 grams, his base offense level under §

---

[1]Where a defendant is convicted of multiple counts, the guidelines require certain "closely related" offenses to be grouped together and treated as a single group to "prevent multiple punishment for substantially identical offense conduct." U.S.S.G. Ch. 3, pt. D, introductory cmt. Counts are considered "closely related" for grouping purposes when they involve substantially the same harm or conduct. See U.S.S.G. § 3D 1.2. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines.

[2]U.S.S.G. § 3D1.4 is the guideline provision for determining the combined offense level for multiple counts. This section provides that a defendant's combined offense level is determined by taking the offense level applicable to the group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
| --- | --- |
| 1 | none |
| 1 ½ | add 1 level |
| 2 | add 2 levels |
| 2 1/2-3 | add 3 levels |
| 3 1/2-5 | add 4 levels |
| More than 5 | add 5 levels. |

In determining the applicable number of units, one unit is counted for the group with the highest offense level, one unit is counted for each group that is equally serious or from 1 to 4 levels less serious than the group with the highest offense level, one-half unit is counted for any group that is 5 to 8 levels less serious than the group with the highest offense level, and any group that is 9 or more levels less serious is disregarded.

2D1.1(c)(4) was 32. Two levels were added pursuant to § 2D1.1(b)(1) for use of a firearm, and three levels were added under § 3B1.1(a) for his leadership role, which resulted in an adjusted offense level 37 for group two. Under the § 3D1.4 analysis, because the offense level of group one (28) was nine levels less serious than group two's offense level (37), no levels were added. After factoring a three-level reduction for acceptance of responsibility, the final combined offense level was 34. With a combined offense level of 34 and a criminal history category of VI, Ramos's applicable guidelines range was 262 to 327 months. However, because the 20-year statutory maximum sentence under § 1962(c) was less than the applicable guideline range, Ramos's guideline range became the statutory maximum of 240 months. See U.S.S.G. § 5G1.1(a).

Ramos was sentenced on October 26, 1998. The court, (Nevas, J.), adopted the facts and calculations in the PSR and found that Ramos's combined total offense level was 34, his criminal history category was VI, and his resulting in guideline range was 262 to 327 months. However, because of the statutory maximum, his guideline sentence became 240 months, and the court sentenced him to 240-months incarceration.

## II. Section 3582(c)(2) and Amendment 706

In November 2007, the Sentencing Commission amended the Sentencing Guidelines to generally reduce by two levels the base offense levels of U.S.S.G. § 2D1.1(c), which apply to crack cocaine convictions. See U.S.S.G. App. C, Amend. 706 (Nov. 1, 2007) ("Amendment 706"). While the Amendment was made retroactive, the district court may only reduce a defendant's term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2) after considering the factors set forth in § 3553(a), and only if a reduction is consistent with the Sentencing

Commission's applicable policy statements. This statutory provision "clearly allows for a district court to exercise its discretion when considering" whether to reduce a defendant's sentence pursuant to Amendment 706. United States v. Borden, 564 F.3d 100, 103-04 (2d Cir. 2009). "Reduction is thus entirely discretionary, and the court has substantial latitude in determining whether a reduction is warranted. This discretion, however, is not unlimited. It must be exercised in light of U.S.S.G. § 1B1.10, which implements the authority provided by § 3582 to reduce a sentence. Section 1B1.10 directs a sentencing judge to determine the amended guideline range that would have been applicable to the defendant if the amendments to the guidelines ... had been in effect at the time the defendant was sentenced and to assess the request for a sentence reduction accordingly." United States v. Alejo, No. 08-5565-cr, 2009 WL 1284961, at *2 (2d Cir. May 11, 2009). In addition, a court should consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and the defendant's post-sentencing conduct. U.S.S.G. § 1B1.10(b)(1), cmt. n. 1(B)(ii)-(iii).

In determining whether the Amendment would lower a defendant's guideline range, the court substitutes the amended offense level of § 2D1.1(c), but leaves "all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). In certain cases such as this, the court must also determine the effect, if any, that the lower offense level would have on the combined offense level under § 3D1.4's grouping rules.

### III. Application of Amendment 706

If the court recalculates Ramos's guideline range substituting the Amendment's two-level reduction in his base offense level under § 2D1.4, his combined offense level after applying

§ 3D1.4's grouping rules, is only reduced by one level, from 34 to 33, and his guideline range is lowered to 235 to 293 months. Specifically, with regard to group two, Ramos's base offense level under § 2D1.1 for the quantity of crack cocaine attributed to him is reduced from base offense level 32 to base offense level 30. Adding the same upward adjustments -- i.e., two levels for use of a firearm and three levels for his leadership role -- results in a new group two adjusted offense level of 35, which is two levels less than his original group two adjusted offense level of 37. Amendment 706 has no effect on the adjusted offense level for group one, and it remains the same as before, i.e., at offense level 28. Next, as it did at the time Ramos was sentenced, the court determines his combined offense level under § 3D1.4's grouping rules, but now bases its calculations on the reduced offense level 35. In so doing, the difference between the offense levels of group one and group two is now seven, not nine. Thus, under § 3D1.4(b), his combined offense level is increased by one level, to 36.

In other words, when Ramos was originally sentenced, his adjusted offense level was not increased under § 3D1.4's grouping rules because group one was nine levels less serious than group two, whereas with the two-level reduction in his group two offense level, group one is now seven levels less serious, and thus § 3D1.4 requires a one-level increase in his combined offense level, to 36. After applying the three-level reduction for acceptance of responsibility, his final combined offense level is 33. With an offense level 33 and criminal history category VI, his new guideline range is 235 to 293 months.

**IV.    Consideration of § 3553(a) & Public Safety Factors**

After fully considering anew the § 3553(a) factors, see United States v. Regalado, 518 F.3d 143, 151 (2d Cir. 2008), the public safety concerns, and Ramos's post-sentencing conduct,

the court concludes that a five-month reduction in Ramos's sentence is not appropriate. Indeed, Ramos's original 240-month statutory maximum sentence, which was below his original 262 to 327 month guideline range, remains sufficient, but not greater than necessary to fulfil the penological objectives embodied in § 3553(c).

Moreover, the nature and circumstances of his offense and his criminal history and characteristics counsel against a reduction in his sentence. Ramos was a regional commander of the Latin Kings, a violent drug gang, and was a supervisor in its drug trafficking activities. The racketeering conspiracy to which he pleaded guilty involved multiple acts of violence and murder, and one of the predicate acts in which he was directly involved was a murder conspiracy. As the court noted at Ramos's sentencing hearing, "[a]nybody who thinks that somehow or other the Latin Kings are some organization that provides support for its members and helps out the community is totally misguided. They are destructive criminals who prey on other people, engage in murder and drug dealing...." The court went on to note that Ramos was "very, very involved" in that organization and would have to "pay the price for that" involvement. (Sent. Tr. 7/31/1998 at 8-9).

Further, Ramos is a career offender with a long history of felony convictions (burglary, narcotics, failure to appear, violation of parole, escape) and violence. He was first incarcerated in 1987, at age 18, and was in and out of prison from that time until his arrest in this case. At the time of his sentencing he had a pending assault charge for stabbing a victim twice in the back and striking another on the head with a bottle during a fight between Hispanic males from Norwalk and Stamford. And while he was in pre-trial detention, he was involved in an assault for which he received 50 days lock-down, 30 of which were suspended. In fact, as the PSR states, Ramos's

6

role in gang violence was the most aggravating factor in his criminal history. Even his co-conspirators viewed him as the type of individual who could handle problem situations, especially when violence was a necessary part of the solution. Finally, firearms were integral to the drug conspiracy he was involved in and he acknowledged and stipulated that he possessed a firearm while engaging in drug trafficking activities.

The court's decision to leave Ramos's sentence unchanged is also supported by troubling behavior described in his BOP progress report involving recent disciplinary incidents that caused him to lose commissary and telephone privileges and Unicor work assignments. The court's decision is also supported by the Probation Department's conclusion that due to public safety factors, a reduction is not recommended.

## IV. Conclusion

For the foregoing reasons, the court concludes a reduced sentence is not appropriate in this case.

SO ORDERED.

/s/ Ellen Bree Burns, SUSDJ
ELLEN BREE BURNS
UNITED STATES DISTRICT JUDGE

Dated this 11 day of September, 2009 at New Haven, Connecticut.